May it please the Court, Anne Saucer at No. 1315-611. I, along with my co-counsel and with the Hawaii Attorney's General's Office, represent the State of Hawaii. I will try to reserve three minutes before the Court are three consolidated cases filed by the State AG against credit card companies for fraudulent and deceptive acts and practices associated with service plan charges on credit card bills. The State has pled that customers in Hawaii were slammed, they were tricked, the credit card companies billed for and collected service charges that the customers did not owe. And I am going to talk about jurisdiction, which you are hearing about for the first time today. It's jurisdictional day in the Ninth Circuit. There is no subject matter jurisdiction over these State law claims. The District Court erred in applying the complete preemption doctrine. That doctrine is inapplicable for two independent reasons. Number one, the service plan charges are not interest. And number two, the complaints do not plead usury. As an overview to my complete preemption arguments, I would like to highlight the Fifth Circuit's decision decided December 2, 2013. It's in one of the State's 28J letters. In that decision, the Fifth Circuit decided the same two issues that were certified before this Court were certified before the Fifth Circuit. The same banks lost the same arguments. The Court will find that the Fifth Circuit accepted the same arguments the State of Hawaii makes here. The Fifth Circuit cited many of the same Supreme Court decisions. Caterpillar, Franchise Tax Board, Beneficial National Bank, Waters v. Wachovia, the same block, quote, Dismiley. The Fifth Circuit found that the State in that case had accurately read all of those cases and that they did, in fact, compel the conclusion that the State's case was not subject to the complete preemption doctrine. If the order appealed is not reversed, that will create a split between the Ninth and the Fifth Circuit on this issue. I take it your position on this is that each of these prongs independently mean that there's no complete preemption. In other words, let's assume for a second that the finance charges are interest. Yes, Your Honor. Or that the fees are interest. I'm sorry. Nonetheless, you would say your complaint doesn't challenge the rate of interest? That's exactly right, Your Honor. And, in fact, That your complaint would stand no matter what the rate of interest was, no matter what the fees were? I'm sorry. Let's assume the fees are interest, just for purposes of discussion. If the fees are interest, then does it matter at all to your complaint what the level of those fees are? If I may break the question down into two parts. Sure. Okay. Our argument is that even if you assume that they're interest, the complete preemption doctrine does not apply. That's right. Because usury is not pled. Okay. But my question is slightly different, which is that you're not claiming that the rate of the fees, the amount of the fees, is in itself illegal. Because if they were interest, that would be a usury claim. Your Honor, you're absolutely right. There is no claim anywhere in these complaints that the rate of the fees is illegal. That's why the complete preemption doctrine does not apply. So could you have legal fees? Let's assume a pure interest situation. Could you have a legal rate of interest, but a nonetheless illegal transaction because it was being misrepresented to people? Well, absolutely. And I think some of the cases that we have cited in our brief do talk about, I think, late fees that have been categorized as interest. And still, the courts in these cases have said, if what you're saying is it was fraud, if what you're saying is not usury, then the answer does not apply. I want to be transparent. I ask this question because I find the interest question difficult, but I find the question of whether your complaints challenge the rate of interest less difficult. In other words, one can have a fraud complaint for a perfectly okay car loan that says I misrepresented something or I targeted elderly people or something like that. That is a good question. Which issue would you like me to address first? The one you like better or the one you like worse? I'm trying to separate the two and make sure that in your view they're not dependent on one another. They're not dependent on one another, Your Honor. They are not dependent on one another because the analysis is that according to Beneficial National Bank v. Anderson, these claims are completely preempted. What the Court found in Beneficial National Bank was that a complaint that expressly unambiguously and unquestionably pled usury was preempted, and the only issue was usury. Let's assume we agree with you that there's not complete preemption here. There's a CAFA issue lying, lurking in the background here, the Class Action Fairness Act, which like everything Congress labels, the label doesn't really mean what they said. But should we address that issue? No. You can because it's a really horrible argument, which is why the appellees did not perfect the petition over it. I know we can, but tell me why we shouldn't or should. First, the deadline promulgated by Congress in 28 U.S.C. 1453C for taking up a CAFA denial on interlocutory review has long run, and these appellees purposely let it run by not filing a petition. We are disadvantaged in any way because they let it run? Yes. These cases were filed in State court over two years ago. And had they taken it up on a CAFA fast track, we would be back in State court. I mean, I would have loved to be up in a CAFA fast track. Had they taken that issue up quickly, then the district court, but the district court found complete preemption here, so you'd still be stuck in Federal court waiting for us, wouldn't you? No. What I would do is what I did in the Fifth Circuit, which is to ask for 1292B on the Federal question, and then to ask for permission to file under 1453C, and the Fifth Circuit accepted both of those petitions. And put them together and move them quickly? Yes. Now, have you been disadvantaged in any way in briefing on this issue? Well, according to the 2001 decision of this Court in Reese v. Petroleum, it is not fair to the appellant where you have in Reese Petroleum advised parties that if they want to take up an uncertified issue in an interlocutory appeal, they should file a FRAP 5B2 cross petition. And their failure to do so is unfair to the appellant. I had to reply in a reply brief as a Napolese brief. And also, it risks violating the party participation principle. I guess I'm having a little trouble with that argument, because here the district court held there was Federal question jurisdiction, and our general rule is we can uphold the district court on any basis supported by the record. So even if the district court didn't have Federal question jurisdiction because we disagree on the complete preemption for purposes of argument, wouldn't we be able to uphold the district court on the Catholic grounds? Well, if we just determined that there was Catholic jurisdiction. I believe, Your Honor, that that would be inconsistent with what the Reese Court said about parties having or they are advised to file cross petitions. Also, you would be deciding a Catholic issue outside of the time limits promulgated by Congress. But I don't want to be held up on this, because this is such a bad argument. It illustrates why it wasn't ---- Before we get to the merits of the argument, though, I'm interested in our ---- The question is about whether we should take it up. Let's assume we don't take it up. The district court member found complete preemption, found Federal jurisdiction. Let's just assume for purposes of discussion that we agree with you there is no complete preemption. The district court then does what with respect to the Catholic claim? Well, it's already been denied, so the case gets remanded. Right. And it will remand. Isn't that an appealable order? I mean, if you order the ---- Oh, I see. I see what you're saying. Maybe it's for the three better judges, but let's back up here anyway. I don't think that that is what Congress intended in 1453c, for there to be a retriggering of the deadline. Well, there was no remand order in this case, because the district judge didn't think the case should be remanded because the judge believed that there was Federal question jurisdiction. So if, in fact, the Catholic claim is turned, you know, what you want to happen in this case is for us to say no Federal question jurisdiction. You want us not to reach the Catholic claim. The district judge will then say, okay, now that I know there's no Federal question jurisdiction, I'm sending this case back to state court. And then aren't the scoundrels on the other side of sandbag you going to be up here again raising exactly the same issue? And wouldn't you rather we decide it than three other people? Okay. I mean, you could. Okay. You could do that. You could say we're not going to reach it and it's a really bad argument, and if they file a 1453c petition after remand, that's going to be horrible, too. I mean, you could help the State out that way. But I understand what you're saying. If you want to reach it. I understand your point about the absence of a cross-petition, and I understand that it's unfair. But in this case, I wonder whether or not normally what that means is the case won't get reviewed until final judgment. Here it seems almost certain there will be a final judgment and we'll be right back. Am I wrong about that? I don't think that they should file a 1453c cross-petition. And if they do, I mean, a petition, not a cross-petition. Won't they have a 1291 appeal? Won't they have an appeal under the statute? Once, not 1291. Won't they have an appeal under the statute if a remand order is entered? I think it would be law of the case that there's no complete preemption, and I think it would be law of the case that they waived any further argument they had about HAFLA by failing to perfect. So if in State court then the State realizes that it can't bring its UDAP claim for damages except as a class action as stated in the statute, then the other side would be precluded from raising a CAFLA claim because the time frame would have expired. Under 1446b, you have to raise, the defendant has to raise their CAFLA issue and remove based on CAFLA within 30 days, I think it is, of determining that's a class action. They've already determined it was a class action, and if we don't address that claim, they're just going to be stuck back in State court. Is that correct, or is there some way they would still be able to remove under CAFLA? First, the State of Hawaii does not agree with the Apley's reading of State law. We just think they're wrong about that. But the problem with it is, is that they're trying to establish subject matter jurisdiction based on their argument, which is essentially a 12b6 argument. So if we agreed with you, the argument you raised was VAG's complaint isn't filed as a class action. We disclaim any intent to bring it as a class action. We think there's another route as a matter of State law to get UDAP restitution damages claims without bringing a class action. So let's say that the State court disagrees and says, you know, the language of UDAP is clear, the only way you can get damages is through a class action. Then what happens? Is the AG going to say, oh, no, this actually was a class action all along, and we still want our damages. How is that going to work? Because it sounds like you could be taking a position for purposes of saying there's no coppage jurisdiction and then change your mind once you're in State court. Your Honor, I think that, well, first, the AG will not do that. But were the AG to do that, I think you'd get into the other paper line of cases where if something was not removable and it becomes removable, then that restarts the removal period. Okay. So the defendant is saying, we think it's removable now because although you say it's not a class action, it actually is. But you're taking the position now that should the AG, in light of State court reasoning, if the AG determines that the only way they can get restitution is under 414B, is that it, which says you have to bring a class action, then they would have another opportunity to remove it. Is that the State's position? The State's position is that the State is not going to ever say that we filed the case as a class action because we can't, because we've pled that we can't. And whatever happens later in State court, if the State court were to say that you have to choose, we don't believe the State court will. But if that happens, then the Attorney General is not going to file a class action. We don't believe that we have to. Maybe we'll take it up to the Hawaii Supreme Court. This is all a manufactured merits issue. But if it were to happen, if we were to totally say something different that creates Catholic jurisdiction, then that would trigger a new removal period. But I want to understand your position. Your position is this isn't a class action. If it goes back to State court and they say, well, it has to be a class action because that's your only statutory authority to bring it, you'll say, well, I'm sorry, then I guess we lose. And we'll appeal that issue to the Hawaii Supreme Court. But you won't then say, okay, it's a class action. That's correct. And if we were to say it, I think the other ---- But that's what we ---- I keep getting pause when you say, that's right. But if we were to ---- Your Honor, no. Your Honor, let me ---- I want to just hear. Your position is this ain't a class action and we're never going to say it's a class action. Correct. That is our position. It's not a class action. We're never going to say it's a class action. On page 33 of the Hawaii's reply brief, I believe it is, we cite two cases, Erie Insurance Exchange decided by the Third Circuit in 2013 and the Zuckman case decided in August 2013 by the D.C. District. And they both talk about this issue of you can't use this argument that the State procedure was defective to manufacture subject matter ---- In other words, you may lose in State ---- you may lose in State court on this argument. Those ---- they're on ---- they're cited in the footnote on page 33 and they speak exactly to these ---- to this issue, these two cases. But I just ---- I just ---- and, again, I don't want to interrupt you. I don't want to ---- I want to understand the State's position. The State's position is this is not a class action and if in State court they say the only way you can proceed is as a class action, then you don't have a case. You may take it up to the Hawaii Supreme Court and argue ---- No, no, no, on that one little element of damages. I mean, all of this is over one damage element. This argument has ---- it's the tail wagging the dog. No, I understand, but I'm talking about that part of the case. May I ---- I'm so sorry I'm out of time, but may I just finish my statement of why this is ---- cannot be considered a Kappa class action? Or no? Why don't we hear from the other side? You're over time, but we will give you a chance to respond. Thank you, Your Honor. Let me address the complete preemption question first because from the comments from the panel it sounds like we're up against tough sledding here and I do want to defend the district court on that point. First of all, the arguments that have been advanced by the appellant here, as well as in Mississippi, misconstrued the beneficial case. They have construed beneficial to hold that unless a state complaint expressly refers to usury, unless it describes rates that are violated, that beneficial does not preempt that state law claim. In fact, properly read, beneficial holds that Section 86 of the National Bank Act preempts completely, that is, disposes of any state law cause of action that is substantively preempted by Section 85. In other words, we have a fundamental disagreement with the state here which they have articulated in their reply brief saying that there is a mismatch between SMILEE, which is the Section 85 substantive preemption statute, and beneficial which construes the preemptive effect of the cause of action found in the National Bank Act. And the reason I say that is that this is the third area in which the Supreme Court of the United States has identified a remedy, statutory remedy, which it deems Congress to have intended to completely displace any state law cause of action with respect to that subject matter. I guess just following up on Judge Hurwitz's question, even if the prepayment protection, even if that is interest, and even if the rates would be unlawful, the claim they're making is not that the rates are too high. The claim they're making is deceptive practices in marketing. At least that's the argument that they're making, and the complaint is focusing on that. So if they're not challenging the interest rates, why can't they bring another sort of claim without being preempted? Oh, they can, but they didn't do that. Why is that? Because what you've seen described in the brief here is not what is found in the complaint. It represents one of the claims found in the complaint. It represents the slamming claims and the deception claims. Those claims, even if they are made with respect to interest, are not preempted by Section 86. If I say to you this loan bears interest at 6 percent, please sign here, and it turns out it bears interest at 8 percent, you can bring a state law contract claim. You're saying that there's something in the complaint here. Yes. Point me to it. Yes. Let me refer you, Your Honor, to the Capital I complaint, which is found in Excerpts of Record 189. 189 is paragraph 5. The complaint. I'm sorry. I've got the wrong complaint. Say this again. Give me my ER sign. Sure. 189. The complaints are all similar, right? They are identical, but for the names of the defendants. Okay. I'm sorry. You said they're identical? But for the names of the defendants, yes. Oh, well, here then. Just give me the paragraph. Paragraph 5. So the paragraph indicates that the complaint concerns payment protection. And then, at least in the Capital I complaints, paragraphs 14 through 38. Hang on a second. I'm reading paragraph 5. Can you point me to the language in paragraph 5 which you think is the most clearly a challenge to the rate of interest? It's not found in paragraph 5, Your Honor. It's actually found in the unjust enrichment claim. And where is that? That is in the Capital I complaint. It is paragraph 85, ER 207. Paragraph 84 incorporates all the prior paragraphs of the complaint. Okay. But you haven't identified any prior paragraph that has one. Not yet. So paragraph 85 says, by unknowingly paying unauthorized or otherwise improper charges, Hawaii consumers conferred a benefit on defendants. And it goes on in 87 to say that that's the acceptance and retention. And those are the paragraphs that you think challenge the rate of interest. Not yet. I mean, this is a ‑‑ there are multiple paragraphs, and they have to be read together. Well, we're at the prayer for relief, so there's nothing after this. No, no. But ‑‑ The unauthorized or otherwise improper would have to refer to the rate as opposed to deceptively obtained for no value in return, which seemed to me the gist. So where is the challenge to the rate? Unauthorized refers to the slamming. It's the otherwise improper. Okay. And if you go back and look, what the complaint alleges is that the defendants don't determine the consumer's eligibility for various options. No, where are you reading from the complaint? Sorry? You said the complaint alleges. What language are you reading from? I'm sorry. It's paragraph 48, ER 199. Paragraph 48? Yes. There is defendants' market payment protection as a product. Is that the one you're reading? Yes, and it indicates that they do not screen people to see whether or not they can get all of the benefits of the plan. But that's still ‑‑ see, it seems to me what they're saying in each of these paragraphs, that's why I keep looking for the one, is that, look, you're selling people a product that's not good for them or that's not appropriate for their circumstances. But I don't see a direct attack in any of those paragraphs to the rate of interest. The attack would still be here if the rate of interest were, and assuming that fees are interest, one point more or one point less, wouldn't it? The section 85 covers not simply rate but the total amount. But basically this is an attack on the price. No, it's not. No, it is because the allegation is that it is unjust to charge for these persons without screening them first. It's an allegation that they have been charged too much for the product because ‑‑ But the objection is that it's unjust to charge them anything. So you sold them something based on false pretenses. No, no, the false pretenses paragraphs are found in 15 to 48. There's an independent claim that's based upon the simple disparity between the value of what the person receives and the price that they pay for it. I mean, I'm looking at 48, and the last sentence says, when minimum monthly payments are credited, the monthly interest charges and the payment protection fees and any other ancillary fees, and I'm looking for the end of the sentence saying, are too high, but instead it just says, continue to accrue without adequate disclosure. But by incorporating these paragraphs into the unjust enrichment claim, the State alleges that it is unfair for Capital One to charge persons for this program at the price that it does so. Or does the State allege that it's unfair not to disclose to those persons the full picture before they are enrolled in the program? That, I think, is a fair reading of the complaint, isn't it? But not of the unjust enrichment part of the complaint. Perhaps of the UDAP claims, but not of the failure to screen complaints. This complaint, fairly read, captures the sale of the product to a retired person who buys it solely because it carries a death benefit. The allegation here is that Capital One doesn't screen to determine whether or not someone is employed or whether they're a part-time employee, employed part-time, because some of the benefits relate to continued employment. So someone who's not currently employed will get no benefit from the loss of employment aspect of the program. They will always get loss-of-life benefits. So the payment protection plans, even as alleged in the complaint, always contain a loss-of-life benefit, and they therefore always have some value. But that goes to the merits of the claim. The claim may be a terrible claim, but aren't they saying you should give more disclosure to people or provide more information to people before they're enrolled in these plans? Because some portions of the plan, even though they charge legally permitted interest rates, assuming the fees are interest, won't be beneficial to people in your circumstances. That's how I read the complaint. Am I right? I think, though, Your Honor, that that's not what's on the page. What's on the page is it's unfair to sell this to someone who can't get all the benefits. And why does that make it a charge, a usury charge? Because it's an objection to the sale based upon the price of the product. And because the price of this product is actually interest within the meaning of Section 85, any claim with respect to the excessiveness of the overcharging Okay, you characterize it. It's unfair to sell it to someone who can't get the benefit? Is that what you said? Unfair to sell it to someone who can't benefit from it? No, who cannot get all of the benefits that may be available to someone else. The product always has a loss of life benefit. So you're saying who can't get all the benefits, and so they should just be paying for whatever is beneficial to them, the loss of life, and to the extent they're paying more, that's analogous to the rate of interest. Is that what you're saying? It's unjust, and that's what the State seeks back. What the State is alleging in this complaint, fairly read, is that the price to elders, the price to persons who are part-time employed, is too high. The value exceeds, the price charge exceeds the value delivered, and that that differential is recoverable as unjust enrichment. So it is an attack upon the price at which the... I understand your argument to be that if this had been sold at, say, half the price, it might have been a fair bargain. Yes. And because it's being sold at twice the price, just to assume something, that means it's a complaint about the price. I understand the argument. Yes. What do you do with the last full paragraph in the beneficial opinion from the Supreme Court? And I'm trying to figure out if they're telling us that there is a sort of rule of reading or rule of construction. The Court writes on page 11, even though the complaint makes no mention of federal law, it unquestionably, unambiguously claims that petitioners violated usury laws. Yes. Now, does unquestionably, unambiguously form part of a test, or is this just a description? I believe it's just... If the test is unquestionably, unambiguously alleges violation of usury, you lose. Yes, but this is an area in which the well-pleaded complaint rule does not apply. It is one of the few areas... But I've got a sense of the Supreme Court. I'm trying to figure out what that sentence means. Yes. I think you have to look farther back in the same decision and see the way in which the Court uses the term usurious and the way it uses the term usury. It uses it in the generic sense of charging more than is permitted by law. And it is not confined to those instances where the claim is based upon exceeding a statutorily specified rate. It describes overcharges generally, and it does so by referring to state common law and statutory law as features of claims asserting that charges are usurious. And so the beneficial case was one in which the state law complaint actually used the word usury. So one of the questions is, is that necessary for complete preemption, or is it simply sufficient for complete preemption? An argument is that it is sufficient for complete preemption. I understand that's the argument, but I'm trying to figure out what this sentence means. When the Supreme Court says, we're finding complete preemption here because the complaint unquestionably, unambiguously claims violation of usury laws, does that tell me that a case that has to be strained to read as a complaint about violation of usury laws provides a basis for complete preemption removal? Yes. Because the ordinary rules regarding whether prerequisites for preemption or not apply in a complete preemption case. That is, are the factual predicates established by a preponderance of the evidence? And here the factual finding of the district court was that the amounts paid here were paid for an extension of credit, and that qualifies it as interest. But let's look at what the Supreme Court says. In actions against national banks for usury, then goes on to say, and then it goes on to say after that, these are plainly complaints alleging usury. Unambiguously and unquestionably claim the Petitioner violated usury laws. So you read beneficial and the statute as saying, anytime somebody complains about a charge, even though the charge itself may be not usurious, the claim is preempted. No, to be precise, state law cannot be used to challenge the amount of interest charged by a national bank. Period. Now, I don't mean by that to include instances where you should have charged for 10 days and you charged for 12. So the example I asked before, make it a home loan, because we seem to see a lot of cases where people are now claiming that they were defrauded with respect to home loans, and they say the rate of interest was fine, but you shouldn't have placed me in this product. This is a terrible product for me. That's not preempted? Fair to say, yes. So why isn't that what they're alleging here? You should have never placed me in these products. These products are terrible products for us. If they had alleged that, then perhaps we might not be here, but the complaint does, in fact, allege that the price is too high. We have to infer that from the complaint. You can't point us to any paragraph that says the price is too high. No, but I can point you to paragraphs that say you didn't screen me and we have a right to recover the excess of the price paid over the value delivered. That's what the evidence in the original paragraphs go to. Ken, I know time has expired, and I don't want to hold this up too long, but why should we address the CAFA claim since you didn't file a cross petition? You're excellent lawyers on both sides of this case. You decided not to file a cross petition. Why should we take it up? Well, because, as you indicated before, Your Honor, you have the power to do so. But, yeah, no, we all agree we have the power to. Why should we as a prudential matter take it up since it's not? For the very reasons that you intimated in your question. So why didn't you file a cross petition? Because there was no remand to worker based upon the denial of CAFA, for one thing. I mean, it's questionable as to whether or not there was a CAFA appeal available to the issuer or defendants out of the district court's order sustaining jurisdiction. Well, this would have been a petition for certification, though, wouldn't it? Yes. We have interlocutory questions decided. You could have said 1292B. We could have and we didn't. We didn't. But it – Shouldn't we at least give them an extra brief? You shouldn't get to go first. You shouldn't get to go. They're a little bit disadvantaged only responding in their apply brief, aren't they? No, because if we had we appealed and granted the leave to appeal, they would have had one answering brief. So you're missing one brief. Essentially, yes. I mean, there's no disadvantage. You're not willing to put up with that disadvantage. Yes. Yes. And if I might spend 30 seconds on the CAFA issue. You know, I think we understand the CAFA issue and you're over time.  Thank you, Your Honor. Thank you. Let's put one minute on the clock for you. I think you went over, but let's hear from you. Thank you so much for giving me the minute. I want to make a quick point about CAFA. According to 28 U.S.C. 1332d, the definition of a CAFA class action is a civil action filed under Federal Rule of Civil Procedure 23 or a similar state rule. That's what Congress said. Not could have been, should have been, maybe will be in the future filed under, but that it was actually filed under. The United States Supreme Court earlier this year in the Mississippi, in the case out of Mississippi, AU Optronics, in a 9-0 decision, said shut down the mass action Caldwell case in the Fifth Circuit in a 9-0 decision emphasized the importance of reading the plain language of the statute. Here, if you apply the plain language of the statute, there's no way to say that this case was filed under a class action rule because it was not, because the complaints specifically say there is no class. And to assume there's a class is to say that the Attorney General does not have the power to draft his own complaint and CAFA does preserve the well-pleaded complaint rule. Thank you so much for hearing us today.
judges: W.fletcher, Ikuta and Hurwitz, Circuit Judges